```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BRENDA BOLLER,

                      Plaintiff,               05-CV-6096T

v.                                             DECISION
                                               and ORDER
JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____
```

INTRODUCTION

Plaintiff, Brenda Boller ("plaintiff" or "Boller"), filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision by the Commissioner of Social Security ("Commissioner"), denying her application for Federal Old Age, Survivors, and Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. sections 401 et seq. On November 9, 2005, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Commissioner moved for judgment on the pleadings affirming her final decision that the plaintiff is not eligible for SSDI.

For the reasons that follow, this Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, defendants' motion for judgment on the pleadings is denied. I further find substantial evidence exists in the record that plaintiff is disabled and I order that this case be remanded to the Commissioner for calculation and payment of benefits.

PROCEDURAL HISTORY

     The plaintiff previously filed two applications for disability insurance benefits both ending with unfavorable decisions on April 29, 1998 and June 7, 2000. (T. 29-36, 166-173, 181-188)[1]. ALJ Barry Ryan, the assigned ALJ in this case found no basis under 20 §§ C.F.R. 404.988 and 404.989 to reopen either decisions. Id.

    The plaintiff filed this application for SSDI on February 6, 2002, alleging her disability since June 8, 2000, due to atypical head/ear/facial neuralgia and leg/foot neuropathy. (T. 58-60, 64, 73). This application was denied and on February 26, 2004, a hearing was held before ALJ Ryan. (T. 387-435). The ALJ considering the case *de novo* found that the plaintiff was not disabled because her impairments did not qualify as "severe" impairments as defined in the Social Security Act. (T. 6-8). On December 16, 2004, the ALJ'S decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Id. Thereafter, plaintiff filed this civil appeal.

---

    [1]    All citations "T" refer to the Transcript of the Administrative Record submitted to the Court as part of defendant's Answer, which include, *inter alia*, plaintiff's medical records, transcripts of the hearing before the ALJ and copies of the ALJ's decision denying plaintiff SSDI benefits.

BACKGROUND

A. <u>Non-Medical Evidence</u>

The plaintiff is a 65 year old woman with a college education. (T. 65, 70). Plaintiff left her job as a scientist in 1996 because she was experiencing facial pain on the left side of her head that prevented her from wearing glasses. (T. 395). She had worked as a research scientist in glass making for 32 ½ years. (T. 65). Plaintiff alleged that since 1996 she has only been able to wear her glasses about two to four hours a day which effectively blinded her because her vision was so poor in both eyes. (T. 396). She testified that if she could wear her glasses, she would be able to continue working. (T. 396). Plaintiff testified that she had tried using contact lenses, as well as many other different kinds of glasses made out of different materials, but none of them worked for her. (T. 397). In addition, plaintiff testified that she had peripheral neuropathy in her feet and legs which cause a burning sensation. <u>Id.</u> She maintained that she could not stand to wear shoes or socks for more than four hours a day because of this condition. (T. 397-98).

Plaintiff testified that she walked three miles a day for exercise and also went to a gym several times a week but explained that she could complete these activities without pain because they took less than two hours a day. (T. 400, 405). She also admitted that on occasion she went hiking for limited amounts of time. (T.

402). Plaintiff testified that she drove herself to medical appointments, she ran errands as needed during the week, she was able to do her own shopping, cooking, and cleaning, but hired people to do lawn mowing and snow shoveling. (T. 406-07). Plaintiff reported that she goes out to dinner twice a week, spends her evenings reading, watching television and doing paperwork. She stated that she could sit for two hours if she went to a movie and could lift up to 40 pounds. (T. 407-08).

    B. <u>Medical Evidence</u>

On February 18, 1998, plaintiff saw her neurologist, Dr. Caren Douenias, complaining of her typical facial pain, but also of a new burning type pain in her feet. The doctor's impression of plaintiff's symptoms was that of polyneuropathy and planned further testing. (T. 261).

On March 23, 1998, Dr. Douenias reviewed plaintiff's nerve conduction study and noted normal conduction velocities. (T. 262)

On May 13, 1998, Dr. Douenias noted that plaintiff's tests for sensory neuropathy were negative. (T. 262).

On May 28, 1998, Dr. Douenias, reported that she had been following plaintiff since 1996, first for facial pain and more recently for symptoms suggestive of sensory polyneuropathy. (T. 260). Plaintiff complained that her facial pain worsened when she wore eyeglasses which made it impossible for her to work since she needed corrective lenses to function. <u>Id.</u> In the doctor's opinion,

plaintiff was totally and permanently disabled. (T. 260). Notes dated from February 18, 1998 to March 27, 2000 reveal normal neurological signs except for some diminished sensation in plaintiff's feet. (T. 261-66). Nerve conduction tests were negative and laboratory studies were generally normal. (T. 262, 264-65).

On August 13, 1998, plaintiff complained to Dr. Jody Stackman of burning and stabbing sensation on the left side of her head which seem to be triggered by her wearing glasses. (T. 362). Plaintiff also complained of parethesias and burning in her feet that was triggered by wearing shoes and socks, so she went barefoot most of the time. (T. 363.)  Dr. Stackman's examination showed normal extremities, normal motor strength, normal reflexes, and intact sensation. (T. 364). There was no distal sensory deficit or hypesthesia on her legs and feet. (T. 364). Dr. Stackman assessed an unexplained pain/dyesthesia syndrome of unknown/uncertain etiology, resistant to diagnosis and treatment. (T. 368).

On September 18, 2000, Dr. Douenias saw plaintiff for continued facial pain and neuropathy in her feet. (T. 267). She again assessed that plaintiff was totally disabled. Id.

On October 2, 2000, Dr. Douenias noted that plaintiff's pain and sensory discomfort could not always be measured. (T. 268). She remarked that plaintiff's pain did not permit her to wear glasses which made it difficult for her to be gainfully employed. Id.

On October 23, 2000, Dr. John Caronna, a neurologist, examined plaintiff for complaints of the same alleged facial and foot pain. (T. 274-275). He found her cranial nerves to be intact, her reflexes intact and symmetrical, her sensory testing and strength normal, and found no loss of sensation in her face. (T. 275). He remarked that plaintiff had symptoms "suggestive of a stocking neuropathy" but noted normal nerve conduction velocity. (T. 275).

On November 28, 2000, Dr. Caronna remarked that most likely the facial pain stemmed from an irritation of cervical nerves and that the foot pain was most likely peripheral neuropathy related to yet undetermined metabolic factors. (T. 276.)

On January 29, 2001, Dr. Barbara Mols-Kowalczewski, a specialist in endocrinology and metabolism examined plaintiff and remarked that she demonstrated no pathologic reflexes, and no focal deficits. (T. 228). The doctor remarked that an abnormal glucose tolerance test could precipitate into diabetic neuropathy which might be the cause of her facial and foot pain. Id. The doctor ordered blood tests, advised plaintiff to diet, and increased her dosage of Synthroid. (T. 228).

On February 27, 2001, blood tests showed normal glucose and insulin levels. (T. 286-87).

On April 12, 2001, plaintiff saw Dr. Kathleen Hallinan. Dr. Hallinan found no sensory deficits other than slight dullness to a

6

pin prick on plaintiff's lateral right foot. (T. 313-14). She found no focal weakness or cranial nerve deficits. (T. 313).

On April 20, 2001, plaintiff underwent magnetic resonance imaging ("MRI") of her brain and face. (T. 271-73). These tests showed extensive sinusitis and some bony erosion. Id.

Dr. Douenias' noted on June 30, 2001 and January 7, 2002, that plaintiff was in good spirits, appeared well, and had even lost weight. (T. 270). Although plaintiff still complained of pain in her face and feet. Id.

On August 23, 2001, plaintiff saw Dr. Hallinan and reported that she had been going to Curves and had down some hiking while on vacation. (T. 315). Plaintiff maintained that exercise helped her pain. Id. The neurological examination was normal and straight leg raising test was negative. Id.

Dr. Mols-Kowalczewski saw plaintiff on October 29, 2001 and observed that plaintiff had abnormal iron studies. (T. 232-33).

On November 15, 2001 laboratory studies were within normal levels. (T. 288-91).

On February 18, 2002, plaintiff saw Thomas Landry, D.O. for an eye examination. (T. 145, 329). Plaintiff's vision uncorrected vision was 20/200 in both eyes, her corrected vision was 20/25 on the right and 20/30 on the left. Id. Plaintiff was given a new prescription at that time. (T. 145).

On June 13, 2002, Dr. Douenias completed an Attending Physician's Statement of Functional Capacity stating that plaintiff should avoid all exposure to gases/fumes, temperature extremes, high noise levels, and closed spaces. (T. 369). The doctor reported that plaintiff had some limitations in using transportation, standing, walking, sitting, changing position, and assuming cramped positions. Id. She also indicated that plaintiff was not limited at all in reaching, pulling, twisting, grasping/handling, finger dexterity, repetitive movements, climbing, or balancing, and she could lift 31-45 pounds. Id.

On September 30, 2002, Dr. Douenias wrote that she supported plaintiff's claim of disability, while acknowledging "it is understood that there are no definite "objective findings" to prove her disability." (T. 139).

On October 8, 2002, Dr. Kenneth Hogrefe, an ophthalmologist, examined plaintiff. (T. 144). He noted that plaintiff's vision without correction was 20/150 in the right eye and 20/100 in the left eye. Id. Plaintiff's vision with corrective lenses was 20/20 in the right eye and 20/25 in the left eye. Id. He noted that because of her dry eyes, she is a poor candidate for contact lenses. (T. 325).

On October 21, 2002, Dr. Douenias reported that plaintiff is taking the following daily medications: Estrace, Inderal LA, Lopid, Synthroid, Dilantin, Baclofen, and Zyrtec. (T. 355). The doctor

8

also noted that plaintiff suffered from the following side effects which include fatigue, drowsiness, imbalance, dry mouth, bad dreams, short term memory loss, and difficulty concentrating. (T. 355).

On December 12, 2002, Dr. Mols-Kowalczewski saw plaintiff for her peripheral neuropathy. (T. 378).

On January 13, 2003 and on September 15, 2003, Dr. Douenias completed a Physician's Functional Capacity which had similar assessments to her June 13, 2002 report stating that plaintiff was indeed disabled. (T 369-70).

On February 14, 2003, plaintiff saw Dr. Mary Ellen Smoolca, DPM, for a general foot evaluation. The doctor observed a decreased sensory perception to both feet and diagnosed neuritis. (T. 358).

The results of a thyroid ultrasound test from June 18, 2003 by Dr. Andrew McDonnell revealed normal limits of lobes and most probably benign hypo and hyper foci. (T. 359, 224).

On October 30, 2003, a repeated thyroid ultrasound test revealed normal size thyroid glands. (T. 386).

On November 10, 2003, plaintiff saw Dr. Mols-Kowalczewski for primary hypothyroidism, Hashimoto's thyroiditis, glucose intolerance, hyperlipidemia, peripheral neuropathy, and restless leg syndrome.  (T 381-82).

LEGAL STANDARD

A. Jurisdiction and Scope of Review-

42 U.S.C. § 405(g), grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering a claim, the Court must accept the findings of fact made by the Commissioner provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938).

Under this standard, the court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the law judge." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

B. Legal Standards-

Under the Social Security Act ("the Act"), disability insurance benefits may not be paid unless a claimant meets the insured status requirements of 42 U.S.C. § 423 (c). Here, plaintiff met the special insured status earning requirements of the Act for entitlement to disability benefits only through December 31, 1997. (T. 16, 63). In addition to establishing insured status, plaintiff must also demonstrate :

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

>has lasted or can be expected to last for a continuous period of not less then 12 months...

42 U.S.C. 423(d)(1)(A); see Barnhart v. Walton, 535 U.S. 212, 214 (2002).

Furthermore, the Act requires that an individual will be determined under a disability only if her physical or mental impairments are so severe that she is unable to do neither her previous work, nor when considering her age, education and previous work experience, any other work in the national economy. 42 U.S.C. § 423 (d)(2)(A); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

In evaluating disability claims, the Commissioner instructs adjudicators to follow the five step process promulgated in 20 C.F.R. § 416.920.  First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work.  Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission.  If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled.  If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work.

If he is not, the fifth and final inquiry is whether the claimant can perform any other work.  The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner.  <u>Bush v. Shalala</u>, 94 F.3d 40, 45 (2d Cir. 1996). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003).

<u>DISCUSSION</u>

The Commissioner contends that there is substantial evidence in the record to support the ALJ's determination that the plaintiff is not disabled and her motion for judgment on the pleadings should be granted.  Although the ALJ followed the five step procedure, he improperly concluded that the plaintiff's claim that she was disabled, lacked objective evidence in support thereof and, therefore, the claimed disability did not constitute a severe impairment within the meaning of the Act. (T. 21-22).

The plaintiff argues that her claim must at least be remanded to the Commissioner because significant evidence of her disability was ignored by the ALJ. Specifically, she alleges that 1) the Commissioner improperly failed to give proper weight to the opinions of her treating physicians; 2) the Commissioner improperly concluded that plaintiff does not have a severe impairment; and 3) the Commissioner improperly discounted significant evidence of the plaintiff's disability.

12

This Court finds that there is substantial evidence in the record to support the plaintiff's claim of disability because the ALJ failed to give proper weight to the opinions of her treating physicians. "The law gives special evidentiary weight to the opinion of the treating physician." <u>Clark v. Commissioner</u>, 143 F.3d 115, 118 (2d Cir. 1998). I find that the ALJ erred when he failed to find that plaintiff's impairment was severe even though her treating physician treated her for disabling impairments since February 14, 1996. Specifically, plaintiff was treated by Dr. Douenias a neurologist for approximately 10 years for facial pain and sensoral polyneuropathy in her feet causing a disabling burning type pain. (T. 261). Dr. Douenias found the plaintiff to be "totally and permanently disabled."(T. 261). Moreover, Dr. Hallinan noted she suffered from peripheral neuropathy limiting her ability to wear shoes for any length of time because of her extreme pain. (T. 142). Dr. Hallinan concluded that it would be "difficult for her to work in an environment outside of the home, without significant modification to her work environment." (T. 143). Dr. Mols-Kowalczewski treated plaintiff for intense painful burning of the feet, leg, and, thighs and for temporal pain and found plaintiff to be "unemployable." (T. 350). Furthermore, although Dr. Douenias' report acknowledged that "it is understood that there are no definite "objective findings" to prove plaintiff's disability" which the ALJ relied upon, Dr. Douenias' report also stated:

> Over the years, I have diagnosed her [the plaintiff] with sensory polyneuropathy. She also has restless leg syndrome, which makes it very difficult to wear normal footwear. She suffers from severe pain in her feet and this also interferes with her sleeping at night. She has migraines as well, which appeared to be controlled on medication.
>
> At this point, I support her disability, although it is understood that there are no definite "objective findings" to prove her disability. In the area of neurology in particular, we frequently find patients whom we feel are disabled based on their symptoms and diagnoses; however, cannot prove to the courts that there are indeed any test that explain their symptoms. It is my opinion as a board certified neurologist, that Brenda Boller is disabled secondary to her above mentioned problems. If I can be of further assistance to this patient, please contact me directly.(T. 354).

Despite this evidence, the ALJ concluded that her impairments were not severe.

An impairment is not severe if it would not significantly limit the claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. 404.15221; Bowen v. Yuckert, 482 U.S. 137 (1987), Social Security Ruling ("SSR") 85-28. Basic work activities include walking, standing and sitting, or understanding, carrying out, or remembering simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine setting. 20 C.F.R. 404.1521(b); see Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995)(describing basic work activities). Here, plaintiff maintains that she is confined to her home for 12 hours a day with only 20/200 vision because she cannot wear eyeglasses or footwear for more than four hours a day, and these combinations of

conditions significantly limit her physical capacity to perform basic work activities. (T. 12). Plaintiff's treating physician, Dr. Doeunias, a board certified neurologist, who has been treating plaintiff since 1996 agrees with plaintiff's claim and has treated her for these disabling impairments. I find that the opinion of Dr. Douenias, her treating physician was based upon her professional belief that her patient was indeed suffering from a severe medical impairment that disabled her, "it is my opinion as a board certified neurologist, that Brenda Boller is disabled secondary to her above mentioned problems." (T.354). Thus, the ALJ's conclusion that the objective evidence of the record did not substantiate the plaintiff's claim of disability is not supported by substantial evidence unless the opinion of her treating physician is ignored along with the opinions of Dr. Hallinan and Dr. Mols-Kowalczewski.

Therefore, I find that the ALJ's conclusion is not supported by substantial evidence in the record but that the record, read as a whole, presents sufficient evidence to support the plaintiff's claim of disability. That conclusion is supported by the opinions and conclusions of her qualified, board certified, treating physician along with other treating physicians spanning the period of ten years.

## CONCLUSION

For the reasons set forth above, I do not find substantial evidence in the record to support the ALJ's conclusion that the

plaintiff is not eligible for SSDI. Accordingly, the Commissioner's motion for judgment on the pleadings is denied. I further find substantial evidence exists in the record that plaintiff is disabled and I order that this case be remanded to the Commissioner for calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         April 27, 2006